UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X
CESAR A. BARTUREN, JASON BORGES,
RAUL LARA MOLINA, RAYMUNDO LARA MOLINA,
MIGUEL EDUARDO TABARA, MARCO ANTONIO
CORONA, JUAN CARLOS MOLINA, JULIO CESAR                    07-CV-8127
(LLS)
MORENO GONZALEZ, PEDRO HERNANDEZ
HERNANDEZ, JULIO ANTONIO, JULIO CARBONEL,
EUSEBIO SANTOS FERROSQULLO, LIMO
MARTINEZ, JUAN JOSE PENA FARFAN,
JOSE FERNANDEZ, AND JORGE LEGIS CUYATE
CARMONA on behalf of themselves and all
other employees similarly situated as class
and collective representatives,

                Plaintiffs,

WILD EDIBLES, INC., 535 THIRD AVENUE
LLC, D/B/A WILD EDIBLES, RICHARD MARTIN,
AND JONATHAN MEYER,

                Defendants.
———————————————————————X

STATE OF NEW YORK}
                 S.S.
COUNTY OF NASSAU }

THOMAS J. BIANCO, being duly sworn, deposes and states:

1. I am an attorney admitted to practice in the United States District Court of the State of New York. I am a partner in the firm of Meltzer, Lippe, Goldstein & Breitstone, LLP, counsel for the Defendants.

2. I make this affidavit to set forth certain procedural deficiencies in Plaintiffs' application for *ex parte* relief, as well as to establish the relevant factual inconsistencies and contradictions evident in plaintiffs' case.

3. This firm was retained by Defendants on Monday, September 10, 2007 to represent Wild Edibles, Inc. ("Wild Edibles" or the "company") with regard to two matters, the first being certain charges against the company by the Industrial Workers of the World Local 460/640 (the "Union") filed at the National Labor Relations Board on August 27, 2007.

4. The charges alleged, *inter alia,* that Wild Edibles had terminated Raul Lara on August 10, and Jason Borges on August 20 for supporting and/or seeking to join

the union during the union's organizing campaign. (A copy of the charge is annexed hereto as Exhibit A.)

5. The second matter related to a letter, also dated August 27, 2007, from an attorney named David B. Rankin, Esq. alleging violations of the Fair Labor Standards Act. The letter advised that Mr. Rankin represented several unnamed and unidentifiable Wild Edible employees and that the letter was being sent solely *"for the purpose of exploring settlement possibilities and is to be used for no other purpose"*. The letter went on to request a response from the company or its attorneys. **The letter did not indicate in any way that a complaint would be made to any government agency or any litigation would be initiated if a response was not forthcoming.**

6. On Tuesday, September 11, 2007 I was advised by Wild Edibles that one of its largest customers, a restaurant, had been contacted by the union for the purpose of having them cease doing business with Wild Edibles. After investigation into the facts and circumstances an unfair labor practice ("ULP) charge was filed against the Union alleging unlawful secondary boycott activity in violation of Section 8(b)ii(4)(B) of the National Labor Relations Act. (A copy of this charge is annexed hereto as Exhibit B.) Additional time was spent the rest of the week compiling factual and legal support for the ULP charge in the hope of obtaining a cease and desist remedial order.

7. On Friday, September 14, 2007 I was first able to respond to the letter from Mr. Rankin. I called him at noon and introduced myself. I asked him to tell me what was the basis for his allegations, whether he could tell me then or was it necessary to put in writing or perhaps better to meet face to face to discuss them.

8. Mr. Rankin said that it didn't make sense to meet because he was filing a lawsuit on Monday.

9. I asked him what was the reason for the rush, as he never mentioned a lawsuit in his letter and it didn't seem necessary to go that far yet, as we didn't even know the claim and he didn't know the company's response.

10. Mr. Rankin said he was getting a lot of pressure from his "clients" to move this thing forward and he had to file it Monday. He said he had not yet drafted a Complaint yet but would be doing so over the weekend.

11. I asked Mr. Rankin whether he would be filing in Federal Court under the FLSA or N.Y. Supreme Court under the Labor Law.

12. Mr. Rankin advised that he was filing in federal court seeking a temporary restraining order based on the retaliatory discharges of three employees as well as damages under the FLSA.

13. I asked Mr.Rankin to tell me who he was claiming was fired for FLSA retaliation. He could not tell me the name of any employee. I pulled out the

2

NLRB charge the union had filed against Wild Edibles (Exhibit A) and read the names of Jason Borges and Raul Lara. Mr. Rankin said he believed those were two of the individuals.

14. We discussed the scheduling of the Rule 65 conference on the TRO. I advised him that I was available Monday and Tuesday. Mr. Rankin said he could not do Tuesday as he had a trial but he would contact me and let me know in advance when he was filing and when a conference might be possible. I thanked him and immediately emailed him my contact information. I also gave him my cell phone number.

15. By noon Monday, September 17, 2007 I had heard nothing from Mr. Rankin. I called his office and left message that I had received nothing from him but to please call me when he was going to do something. I left my office to visit Wild Edibles' customer to see if the union had engaged in the threatened picketing activity against Wild Edibles.

16. Later that night I discovered that Mr. Rankin had left a message in my office voice mail in which he stated that he had already filed his lawsuit and request for a TRO.

17. I did not receive advance notice of the presentation of the application for the TRO. Further, the papers submitted fail to reflect any explanation as to why an *ex parte* application was necessary, nor any evidentiary support for the allegations made therein.

18. For example, the Complaint alleges that five individuals were terminated in retaliation for their actions in asserting their FLSA rights. But of the five, only four of the individuals are alleged to have participated in the seminal event, the August 20 demonstration in which the rights were allegedly asserted. The fifth individual, Reymundo Lara Molina, had been terminated for excessive lateness several days before the demonstration took place. Nowhere in the papers submitted is any evidentiary basis supplied to connect the legitimate termination with the future activity. Further, there is absolutely no evidence submitted to establish that Reymundo Lara Molina asserted such rights prior to August 20th, including any statement from Mr. Molina himself.

19. Paragraph 46 of the Complaint alleges that Borges was fired "a few hours" after asserting his rights in the August 20th demonstration. In the Memorandum in Support, counsel argues that Borges was fired on August 20th during the demonstration, shortly after he was invited into the office to meet with Mr. Richard Martin, the principal of Wild Edibles. (Plaintiff's Memorandum, P. 2) .

20. In fact, Jason Borges was never asked into the office to meet with Mr. Martin. On the contrary, according to the union representative Billy Randal it is clear that it was the Employees who decided to go into the office to speak to Mr. Martin:
"*When Mr. Martin went back to the shop after encouraging the workers to break*

3

*solidarity and cross the picket line, union members decided to send in four representatives to negotiate a return of the workers from the lock-out."* Randal Affidavit, Par. 11.

21. Counsel further argues in the Memorandum that "Mr. Martin refused to agree to pay overtime or benefits and promptly fired Mr. Borges. " In fact, Mr. Martin did not fire Jason Borges. Mr. Borges demanded a raise, which was denied. Upon hearing the denial Borges said "well that's it, I'm done, I'm out of here" and stormed out of the office and the plant. He did not go to work although he was scheduled to be working at that time. Defendants justifiably interpreted these actions to mean that Borges quit.

22. Borges himself admits that the employer took this position at that time and did not come up with this justification some time later:
   *"Randel went into the warehouse. When he came out he said that the boss said that Jason had quit."* Borges Affidavit Par. 9.

Mineola, NY.
September 20, 2007

_____
Thomas J. Bianco (TB2019)


Sworn to before me this 20th
day of September, 2007

_____
Notary Public

MARYANN KATCHEN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 4891017
QUALIFIED IN QUEENS COUNTY
CERTIFICATE FILED IN NASSAU COUNTY
COMMISSION EXPIRES 4/27/11

4

# Exhibit "A"

| INTERNET FORM NLRB-501 (9-07) | UNITED STATES OF AMERICA NATIONAL LABOR RELATIONS BOARD CHARGE AGAINST EMPLOYER | FORM EXEMPT UNDER 44 U.S.C 3512 |
|---|---|---|
| | | DO NOT WRITE IN THIS SPACE |
| | | Case: 29-CA-28497  Date Filed: 8/27/2007 |

**INSTRUCTIONS:**
File an original together with four copies and a copy for each additional charged party named in item 1 with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

**a. Name of Employer**
Wild Edibles

**b. Number of workers employed**
50 ~~30~~ - 35

**c. Address** (Street, city, state, and ZIP code)
21-51 Borden Ave.
Long Island City, NY 11101

**d. Employer Representative**
Richard Martin

**e. Telephone No.** 718-433-4321
**Fax No.**

**f. Type of Establishment** (factory, mine, wholesaler, etc.)
Wholesaler

**g. Identify principal product or service**
Seafood

**h.** The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) (3) _____ of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

### 2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Wild Edibles, (the "Employer"), has violated the Act by:

1) Firing employee Jason Borges on August 20, 2007, a few hours after he and other employees informed the Employer that they had joined the Industrial Workers of the World.

2) Expressing the futility of supporting the Union by stating, inter alia, "they can't join the union, they're illegal;" "I hate unions, unions are disgusting, no union here;" and "I'll never talk to the union only individuals."

3) Soliciting grievances by asking employees what went wrong in order to discourage unionization.

4) Promising individual meetings to address those grievances in order to discourage unionization.

5) Promising employees extra pay at the end of the week in order to discourage unionization.

6) On August 10, 2007, firing employee Reymundo Losa upon identifying him as a potential union supporter in retaliation for that support.

The Employer engaged in the above described conduct because of the protected concerted activities of its employees.

### 3. Full name of party filing charge (if labor organization, give full name, including local name and number)
Industrial Workers of the World- Industrial Union 460/640

**4a. Address** (Street and number, city, state, and ZIP code)
IWW IU 460/640 c/o Teamsters Local 805
44-61 11th Street 3rd Floor
Long Island City, NY 11101

**4b. Telephone No.** 646-645-6284
**Fax No.** 917-591-6128

### 5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
Industrial Workers of the World

### 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By _(signature of representative or person making charge)_  REPRESENTATIVE
(Print/type name and title or office, if any)

**Address:** 44-61 11th Street 3rd Floor
Long Island City, NY 11101

(tel) 646-645-6284
(fax) 917-591-6128
(Telephone No.)

08/22/2007
(date)

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

# Exhibit "B"

Case 2:07-cv-08127-LLS   Document 4   Filed 09/20/2007   Page 7 of 8

| INTERNET FORM NLRB-508 (6-07) | UNITED STATES OF AMERICA NATIONAL LABOR RELATIONS BOARD **CHARGE AGAINST LABOR ORGANIZATIONS OR ITS AGENTS** | FORM EXEMPT UNDER 44 U.S.C 3512 |
|---|---|---|
| | | **DO NOT WRITE IN THIS SPACE** |
| | | Case / Date Filed |

**INSTRUCTIONS:** File an original together with four copies and a copy for each additional charged party named in Item 1 with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. LABOR ORGANIZATION OR ITS AGENTS AGAINST WHICH CHARGE IS BROUGHT

**a. Name**
Industrial Workers of the World International Union 460/640

**b. Union Representative to contact**
Daniel Gross

**c. Telephone No.** 646 645-6284
**Fax No.** 917 591-6128

**d. Address** (Street, city, state, and ZIP code)
44-61 11th Street, 3rd Floor  Long Island City, N.Y. 11101

**e.** The above-named organization(s) or its agents has (have) engaged in and is (are) engaging in unfair labor practices within the meaning of section 8(b), subsection(s) (list subsections) **8(b)(4)ii(B)** of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Since on or about July 1, 2007 the above named labor organization, by and through its agents has threatened, coerced and restrained persons engaged in commerce or in an industry affecting commerce, including Balthazar Restaurant Group, where the object thereof is to force or require such persons to cease using, selling, handling, transporting, or otherwise dealing in the products of Wild Edibles and to cease doing business with Wild Edibles and to force or require Wild Edibles to recognize or bargain with IWWIU 460/640 as the representative of its employees where such labor organization has not been certified as the representative of such employees. Charging Party requests injunctive relief pursuant to Section 10(j) of the Act and a broad remedial order.

**3. Name of Employer**
Wild Edibles, Inc.

**4. Telephone No.** 718 433-4321
**Fax No.** 718 433-4316

**5. Location of plant involved** (street, city, state and ZIP code)
21-51 Borden Avenue, Long Island City, N.Y. 11101

**6. Employer representative to contact**
Richard Martin

**7. Type of establishment** (factory, mine, wholesaler, etc.)
Wholesale production

**8. Identify principal product or service**
seafood

**9. Number of workers employed**
40

**10. Full name of party filing charge**
Wild Edibles, Inc.

**11. Address of party filing charge** (street, city, state and ZIP code.)
21-51 Borden Avenue, Long Island City, N.Y. 11101

**12. Telephone No.** 718 433-4321
Fax No. 718 433-4316

### 13. DECLARATION

I declare that I have read the above charge and that the statements therein are true to the best of my knowledge and belief.

By _(signature of representative or person making charge)_

Attorney
(Print/type name and title or office, if any)

Address  Meltzer, Lippe, Goldstein & Breitstone, LLP
190 Willis Avenue, Mineola, N.Y. 11501

(Fax) 516 237-2893
516 747-0300 x178         9/12/07
(Telephone No.)           (date)

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**