UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CESAR A. BARTUREN, RAYMUNDO LARA
MOLINA, MIGUEL EDUARDO TABARA,
MARCO ANTONIO CORONA, JUAN CARLOS
MOLINA, JULIO CESAR MORENO GONZALEZ
PEDRO HERNANDEZ HERNANDEZ, JULIO
ANTONIO, JULIO CARBONEL, EUSEBIO SANTOS         **AFFIDAVIT**
FEROSQUILLO, JASON BORGES, LINO MARTINEZ,
JUAN JOSE PENA FARFAN, JOSE FERNANDEZ,           07-CV-8127
AND JORGE LEGIS CUYATE CARMONA,
on behalf of themselves and all other employees
similarly situated as class and collective representatives,
                                    Plaintiffs,

        -against-

WILD EDIBLES, INC, 535 THIRD AVENUE, LLC
d/b/a WILD EDIBLES, RICHARD MARTIN
AND JONATHAN MEYER,
                                    Defendants.
----------------------------------------------------------X

STATE OF NEW YORK }
                  } S.S.
COUNTY OF QUEENS  )

Richard Martin, being duly sworn, deposes and states:

**Introduction**

1.  I am a named Defendant herein and an officer of Wild Edibles, Inc. ("Wild Edibles"). I submit this affidavit in response and in opposition to Plaintiffs' allegations currently known by Wild Edibles and to explain the true facts and circumstances involved in each challenged action.

2.  Wild Edibles is a wholesale and retail fish purveyor, maintaining a principal place of business at 21-51 Borden Avenue in Long Island City. In addition to our main office this warehouse facility also contains approximately 2500 square feet of walk-in type refrigeration units for seafood storage and processing. Wild Edibles has

414406-1

consistently been recognized and "Zagat" rated as one of the finest seafood purveyors in the New York area, providing seafood of the freshest and finest quality.

3. Wild Edibles provides employment for approximately 55 employees in total. We make every effort to treat our employees fairly and reasonably. All employees qualify to receive paid vacations, paid sick days, paid holidays and personal days, and are offered the opportunity to participate in the company health plan and 401(k) plan after three (3) months of employment.

**Background**

4. I understand that Plaintiffs' allege I terminated certain employees in violation of this Court's order, in retaliation for the employees asserting their rights under the law or joining this lawsuit, and not for a legitimate business reason. I categorically deny these allegations.

5. I have been made fully aware of, and I understand, what the consequences would be for Wild Edibles and for me personally if we terminate an employee in retaliation for asserting their rights or for joining this lawsuit, including the possibility of punitive damages, attorney's fees and paying someone for time they were not working. I have nothing to gain from such actions and everything to lose.

6. We have taken no actions in retaliation. Everything we have done has been for bona fide business reasons consistent with our regular practices and procedures. I have neither changed the rules nor have I begun to enforce them differently. Overwhelmingly, however, the challenges posited by the Plaintiffs are not for disciplinary action taken by Wild Edibles, but rather for their own actions in resigning from employment with Wild Edibles and then blaming Wild Edibles.

414406-1

7.  For example, an employee who fails to notify Wild Edibles that he will not be coming to work and then does not come to work ("no call-no show") has resigned his or her employment. They cannot simply resume employment the following day, they would need to be reinstated. Wild Edibles will reinstate such an employee who provides an articulable explanation, not one who simply lies about failing to notify us. By way of example, the named Plaintiff, Carlos Molina resigned as a no call no show, but upon providing an arguable explanation for his behavior (he overslept and lost his cell phone), he was reinstated.

8.  Wild Edibles is no different than any other service business. Employees are expected to come to work regularly and when scheduled. Each night we have to make certain that the employees scheduled to come in to do the work have come in, and when not, to make the changes necessary to get the job done. It is critical that employees who cannot come to work notify us in advance rather than putting the burden on us to discover their absence in order for adjustments to be made.

9.  The number of instances of "no call-no show" vary from time to time. It is quite obvious, however, that instances of "no call –no show" have increased markedly since the Union began its activity this past August. I believe this is not mere coincidence, but a concerted effort by the union to disrupt our production as well as to generate potential litigation, and its expense, for us. Terms like "blue flu" and "work slow-down" come to mind.

10. Plaintiffs' contend that four employees have been terminated in violation of the court order. In fact, all four voluntarily relinquished their positions, with three

414406-1

due to their "no call-no show". The fourth employee quit his job in the middle of a shift and walked off the job.

**The Employees in Question**

11.  Lino Martinez quit his job when he punched out in the middle of his shift and left the warehouse without permission or notice to management. When I arrived in the office on September 25th, the night manager, Richard Rice, told me that Lino never sought permission to leave and did not even tell him that he was leaving. Rice said he found out about it when a coworker, Miguel Tavara, told him. I asked the night leadman, Luis Carbonel, if he gave Lino permission to leave and he said he did not.

12.  By abandoning his job without permission, explanation or excuse Lino voluntarily quit his job. We have never allowed this conduct in the past and will not permit it in the future.

13.  Lino's version of events is ever changing. It is my understanding that Lino now claims that he received permission from Richie Rice to go home that night because he was sick. Yet he showed up the next day showing no signs of illness, seeking to work. Only after he was advised that he was not being reinstated did I learn that he then called for medical help claiming that he hurt his back the night before. I recently received a letter from Lino in which he informs us for the first time that he has filed a workers compensation claim because he hurt his back on the 25th and *that* was the reason he had to go home. Not surprisingly, Lino made no report of this alleged back injury on either the 25th or the 26th (A copy of this letter is annexed hereto as Exhibit "A").

414406-1

14.     Similarly, Jose Fernandez Tabaras relinquished his position when he failed to come to work on October 8th, failed to call and tell anyone he would not be in, and failed to provide any excuse or reason for his absence. Even his brother Miguel Tabara, could not explain his absence. This incident occurred just a few days after I had warned Jose about his attendance. By the end of the shift Jose had not called in with an explanation or excuse, and I considered him to have quit. I told the leadman, Luis Carbonel, that if Jose expected to come back he had better have an excuse or not to bother. Jose never came back to work and never offered an explanation or excuse.

15.     As previously stated, I will reinstate employees who have resigned if they provide an articulable basis for their action. On the night that Lino Martinez walked off the job his coworker Carlos Molina, who is also a plaintiff in this action, did not come to work and did not call to tell management. The next day, however, he came to the office and provided an arguable explanation and was reinstated. He is still employed at Wild Edibles.

16.     I did not retaliate against any employee for any reason prior to the filing of this lawsuit.

17.     Marco Antonio Corona quit his job without any explanation. He worked his scheduled shift on Friday, September 14th. He did not appear for his scheduled shift the next day, and did not call the office to tell anyone in management that he would not be in. He never came back to work. Marco did not tell me why he quit. During his employment Marco did not make any complaints about his treatment or work conditions.

414406-1

18. Raul Lara Molina failed to come to work on August 29th as scheduled, and did not call in to advise that he would not be in that day. He did not provide any explanation to me for this "no call-no show".

19. Jason Borges was employed as a driver. He quit his job on August 20th, the day of the first union demonstration.

20. That day I came to the warehouse early at about 2:45 A.M. Richie Rice had called me and told me there was a picket line in front of the warehouse and most of our warehouse selectors were not working.

21. At about 5:30 A.M I went outside the warehouse with our general manager Robert Blair because that was the time that the drivers would be reporting to work. I wanted to see if the crowd of pickets and their signs created any problems for them getting into the warehouse.

22. The pickets moved towards us and began to surround us. They were yelling things but I did not pay attention to what they said, as I was trying to talk to one of the drivers. At one point I did hear someone say that they wanted to negotiate with me. I said that I would not negotiate with anyone in the street like this. Blair and I then went back in the building. We went into Blair's office. Another night manager, Sidi Quattara, who everyone calls "Watty", was also there doing paperwork.

23. A few minutes later Jason Borges, Cesar Barturin and Herb Cooper came into the office. They said they wanted to talk things out with me to see what could be done. I told them to go ahead

24. Jason Borges was the first to speak. He said he wanted a raise. I said no. He said he didn't make enough money and wanted to be paid more. I reminded him

414406-1

that we were not responsible for the garnishments that take money from his check and that we can't change it. He then said that he deserved more money because he had the hardest route. I laughed. Watty was in the room then and he also laughed. He said something like "are you kidding" and told Mr. Borges that he had the easiest route. Jason continued to say he needed more money and I told him no again. I finally said to him 'that's it ..that's the job ..you can take it or leave it."

25.    Jason did not say anything for a moment, and then said 'well that's it then. I'm outta here." He picked up his bag and left the office in a huff. About a minute later he came back. He went over and grabbed a bunch of the route sheets he used on his route. He was the one who had created them. As he took them he said, "Since I'm not going to be using these then no one else is going to use them". He took them with him and left the office and the building.

26.    Jason never said anything about overtime pay, or respect or reinstatement regarding himself or any other employee. The only thing he talked about was a raise for him.

27.    Later that morning Jason came back into the office as if he was preparing to go to work. I told him that he doesn't work here anymore because he quit. He said "I didn't quit you fired me". I told him he quit. He said I fired him. I said he quit. This went back and forth several times. Finally I told him that I didn't care what he called it he didn't work here and had to leave.

28.    I never discussed Jason's employment status with Billy Randal.

29.    The only employee known to be in question that Wild Edibles actually terminated was Reymundo Lara Molina and he was offered reinstatement. Mr.

414406-1

Molina was discharged because of his abysmal attendance/lateness record. I returned from two weeks away on vacation on August 13. Robert Blair told me that Reymundo was coming in late almost every night. I checked and saw that he had come in late 25 out of 36 days. I had previously warned him about his lateness, apparently without effect, as he continued to come in late. On Thursday August 17th I told Reymundo that he was being fired because of his habitual lateness. (Copies of his time cards are annexed as Exhibit "B.")

30. The next Monday, August 20th was the union demonstration. When I was talking with Cesar Barturin and Herb Cooper in Mr. Blair's office, after Jason Borges had quit and left, I agreed to their request to turn Mr. Molina's termination into a one month suspension. They were going to tell him. I don't know if they did, but Reymundo Lara Molina never sought to return to work.

31. It is my understanding that Cesar Barturin claims that we are treating him differently since the Subject Complaint was served, purportedly setting him up for termination in retaliation for his participation in the lawsuit. This is not true. On the contrary, since the appearance of the union, Barturin's attitude and performance have changed for the worse. He has been taking much longer than normal to complete his deliveries. He has completely disregarded management instructions to follow certain procedures. On more than one occasion he has failed to properly perform his job, such as accounting for the products he picks up and delivers. He has been openly disrespectful to me, refusing to answer my questions, walking away and yelling at me. Barturin now acts like he can do whatever he wants, with absolute immunity.

414406-1

32. I assigned a member of the office staff to ride with Barturin for one day in order to see if there were any new conditions on the route which would require more time for Barturin to complete his route. No conditions were encountered and the route was completed in the time Barturin had formerly required.

33. Subsequently, when another driver filled in on Barturin's route, it was also completed within the time formerly required.

**Conclusion**

34. I hope this provides some clarification for the Court. I am not evil or stupid. I will not take and have not taken actions that would simply place Wild Edibles in a worse position. I respect this Court and its orders and I comply with them. I cannot stop people from distorting the truth to this Court; I can only provide the Court with the truth in response.

Wherefore, it is respectfully requested that the Plaintiffs' motion for preliminary injunctive relief be denied in its entirety and that the Defendants be awarded such other and further relief as this Court deems just and proper.

_____
Richard Martin

Sworn to before me this 18th
Day of October 2007

_____
Notary Public

MATTHEW HOVEY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01HO6174815
Qualified in Queens County
My Commission Expires September 24, 2011

414406-1

# EXHIBIT "A"

October 10, 2007

RE: Workers Compensation Second Notification

Dear Richard Martin,

I was a Wild Edibles employee before I was fired for protected activity. As you know, I was injured on September 25, 2007 at around 4:45 AM in your Long Island City warehouse. I was injured because of heavy lifting combined with the cold air you were blasting at me.

Please communicate the following information to the Elmhurst Hospital Center Worker's Compensation Center, fax number 718-334-3854:

1) Name of Insurance Carrier
2) Address of Insurance Carrier
3) Telephone of Insurance Carrier
4) Insurance Carrier Case #
5) Insurance Policy #

Sincerely,


Lino Martinez

# EXHIBIT "B"



**Card 1:**

TOPS FORM 1261 (C-3000) MADE IN U.S.A

NO. _____ PAY END. _____
NAME **RAYMOND**
Molina Lara Raymundo
BALANCE DUE SHOWN BELOW IS CORRECT AND RECEIPT IS ACKNOWLEDGED

warehouse
SIGNATURE

— July 30 — off

DAILY TOTALS R.T HOURS O.T

(Reg) 1
LATE 2
3
4
LATE 5

W.T. _____ STATE T. _____
F.I.C.A. _____ CITY T. _____
S.D.I. _____ BONDS _____ TOT. EARN. _____
INS. _____ OTHER _____ TOT. DED. _____
HOSP. _____ AMT. DUE _____

**Card 2:**

TOPS FORM 1261 (C-3000) MADE IN U.S.A

NO. MOLINA·LARA· PAY END. ✓
NAME **RAYMOND**
Cachares

warehouse RAYMUND
SIGNATURE
MOLINA, LARA, Raynd

DAILY TOTALS R.T HOURS O.T

① 
② 
③ 
④ 
⑤ 
⑥ ✓

W.T. _____ STATE T. _____
F.I.C.A. _____ CITY T. _____
S.D.I. _____ BONDS _____ TOT. EARN. _____
INS. _____ OTHER _____ TOT. DED. _____
HOSP. _____ AMT. DUE _____

| TOPS | | | TOPS | | |
|---|---|---|---|---|---|
| NO. | | PAY END. | NO. | | PAY END. |
| NAME | RAYMOND | | NAME | Raymond | |
| | | | | LARA MOLINA | |
| | | | warehouse | | |
| SIGNATURE | | | SIGNATURE | | |

Left slip:
- LATE (circled)
- 5F
- LATE (circled)

Right slip:
- ✓
- 1 ✓
- LATE 2 ✓ (circled)
- 3 ✓
- LATE 4 ✓ (circled)
- 5 ✓
- 6 ✓

W.T. ___ STATE T. ___
F.I.C.A. ___ CITY T. ___
S.D.I. ___ BONDS ___ TOT. EARN ___
INS. ___ OTHER ___ TOT. DED. ___
HOSP ___ AMT DUE ___