**Plaintiffs' Memorandum of Law in further
Support of the Request for a Preliminary Injunction**

**PRELIMINARY STATEMENT**

Defendants' retaliatory acts against Plaintiffs both before and since the filing on this action have violated the Fair Labor Standards Act ("FLSA") as well as New York State Labor Law ("NYLL"). This retaliation has been conducted with the intent of discouraging participation in the instant suit by Wild Edibles workers. Such retaliation undermines the effectiveness of FLSA. If these workers, and the many similarly situated workers throughout this City, believe that demands for unpaid overtime will be followed by their termination then all workers will be discouraged from demanding their legally protected rights.

Defendants argue this matter should be stayed pending the outcome of claims in front of the National Labor Relations Board ("NLRB") despite the fact that those claims involve a union which is not a party to this litigation and do not involve the vast majority of named or class plaintiffs in any way. Defendants seek such a stay as a means of delaying their responsibility to pay illegally withheld overtime to Plaintiffs. Defendants themselves argue the Union which brought the NLRB complaint does not represent the Plaintiffs. Plaintiffs have brought their FLSA claims properly before this court and the actions of a Union representative before the NLRB regarding union issues should not be allowed to interfere with this matter, especially due to the defendants continued termination of named plaintiffs.

**STATEMENT OF FACTS**

**I. Plaintiffs' Protected Activities**

On the morning of August 20, 2007 there was a labor action outside of the warehouse where many of the Plaintiffs work.[1] This action informed the Defendants that Plaintiffs demanded to be paid overtime, a fired worker, plaintiff Raymundo Lara Molina, must be reinstated, and that no retaliation be visited upon the participants in the action.[2] If there was any issue with the protected activities involved, that issue is gone due to the filing of this lawsuit.

**II. Retaliation**

Two more plaintiffs, Lino Martinez and Jose Antonio Fernandez Tavara, have been fired after the filing of this lawsuit and without the judicially ordered notice. These illegal acts are in line with defendants' prior egregious violations of these plaintiffs' rights.

Immediately after the workers demanded their rights be respected, Jason Borges was asked into the office to meet with Mr. Martin. At that meeting Mr. Borges was asked what he wanted.[3] He replied he wanted to be paid overtime and receive benefits. Mr. Martin refused to agree to pay overtime or provide benefits and promptly fired Mr. Borges. Upon Mr. Borges' leaving the premises, Mr. Martin yelled at Mr. Borges, "quit or fired, it doesn't f_g matter, you're not going to get anything but unemployment, so get the f_ out."[4] Ten days later on August 30, 2007 Raul Molina, an employee who joined in demanding overtime pay, was fired in retaliation for asserting his rights.[5] Subsequent to Mr. Molina missing a day of work he was suspended for a day by Richard Martin.[6] During his day of suspension, he was told by Luis

---

[1] Rankin Declaration, Exhibit 3 Borges ¶ 5
[2] Rankin Declaration, Exhibit 4 Molina ¶ 7
[3] Rankin Declaration, Exhibit 3 Borges ¶ 8
[4] Rankin Declaration, Exhibit 3 Borges ¶ 9
[5] Rankin Declaration, Exhibit 13 Barturen ¶ 16; Exhibit 9 Fernandez ¶ 18; Exhibit 4 Molina ¶7
[6] Rankin Declaration, Exhibit 4, Molina ¶7

Carbonel he was fired at Richard Martin's direction.[7]  The normal shop practice if a worker missed a day of work was to have that person at most suspended for a day.[8]  Mr. Marco Antonio Corona was constructively discharged on September 14, 2007, or at the very least subject to illegal retaliation, due to highly offensive working conditions that were a direct result of his demanding overtime.[9]

### Post Restraining Order Retaliation by Termination of Named Plaintiffs

Lino Martinez was fired without notice to counsel in abrogation of this Court's order and in illegal retaliation for demanding overtime pay.  On September 25, 2007, Lino Martinez informed Ritchie Rice through Miguel Eduardo "Lalo" Tavera that he was sick and wanted to go home.  Mr. Rice gave Mr. Martinez permission to go home.[10]  On September 25, 2007, after Mr. Rice was informed, Mr. Martinez personally informed Luis Carbonal he was sick and wanted to leave.[11]  Mr. Carbonal also gave Mr. Martinez permission to leave.[12]  On September 26, 2007, Mr. Martinez returned to work at his given start time at 2:00 am and punched his time card.  Ritchie Rice saw Mr. Martinez and told him there was "no more work for you."[13]

Plaintiff, Mr. Jose Antonio Fernandez Tavara ("Fernandez"), was fired on October 8, 2007.[14]  On Sunday, October 7, 2007 Mr. Fernandez was not feeling well and called Wild at 10:00 pm to explain he would not be coming in for his shift on Monday morning.  No one answered and he left a message.[15]  Mr. Fernandez was worried and got up around 5:00 am and again called.  Again, no one answered the phone and he left a message saying he would be in on

---

[7] Rankin Declaration, Exhibit 4, Molina ¶7
[8] Rankin Declaration, Exhibit 4, Molina ¶7; Exhibit 9, Fernandez ¶¶19-20
[9] Rankin Declaration, Exhibit 5, Corona
[10] Rankin Declaration, Exhibit 7, Martinez ¶¶ 5, 12; Exhibit 8, Tavera ¶¶ 5 - 10
[11] Rankin Declaration, Exhibit 7, Martinez ¶13
[12] Rankin Declaration, Exhibit 7, Martinez ¶13
[13] Rankin Declaration, Exhibit 7, Martinez ¶14
[14] Rankin Declaration, Exhibit 9, Fernandez ¶ 29
[15] Rankin Declaration, Exhibit 9, Fernandez ¶29

Tuesday.[16] Monday at noon Mr. Fernandez received a call from his brother, Eduardo Tavara, stating that Luis Carbonal told him Richard Martin said Mr. Fernandez no longer has a job at Wild.[17]

## POINT I

## ALL RETALIATION CLAIMS VALID UNDER THE FLSA

Defendants argue that retaliation against Plaintiffs made before the filing of Plaintiff's Complaint is not covered by the anti-retaliation provisions of FLSA under <u>Lambert v Genesee Hosp</u>,10 F.3d 46 (2d Cir.1993).[18] It is beyond dispute that the filing of the instant action constituted the filing of a formal complaint for the purposes of FLSA, and thus the FLSA anti-retaliation provisions apply to all retaliatory action taken by the Defendants since at least September 11, 2007. Such retaliation includes the firings of Lino Martinez and Jose Tavara which occurred after the filing of this action and in abrogation of this Court's order.[19] Defendants' retaliatory acts prior to September 11, 2007 are also covered under the anti-retaliation provisions of the FLSA.

Section 15(a)(3) of the FLSA makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." 29 U.S.C §215(a)(3).

The importance of the FLSA anti-retaliation provisions has been described by the Supreme Court; "effective enforcement [of the FLSA]… could only be expected if employees felt free to approach officials with their grievances…[I]t needs no argument to show that fear of

---

[16] Rankin Declaration, Exhibit 9, Fernandez ¶29
[17] Rankin Declaration, Exhibit 9, Fernandez ¶30
[18] Defendants' Memorandum of Law in Opposition to the Request for a Preliminary Injunction and a Temporary Restraining Order p.4.
[19] Rankin Declaration, Exhibit 7, Martinez; Exhibit 9, Fernandez

economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." *Mitchell v. Robert DeMario Jewelry, Ing.,* 361 U.S. 288, 335 (1960); *see also Centeno-Bernuy v. Perry,* 302 F.Supp. 2d 128, 135 (W.D.N.Y.2003)("Unchecked retaliation, no matter its form, subverts the purpose of the FLSA…and other federal employment laws.").

Defendants cite *Lambert v. Genesee Hospital*, 10 F.3d 46 (2d Cir. 1993) for the proposition that only a lawsuit is sufficient notice to trigger protection from retaliation. The Court does use the language "formal complaint" in the conclusion, but does not define its parameters. Looking at the complaint deemed insufficient in *Lambert* we see that extremely informal general complaints are not covered. In *Lambert*, there was a general complaint made. The complaint stated in Lambert was only, "[i]t's not fair." 10 F.3d at 55. In this action, there was a meeting demanding overtime, there was a letter warning of potential legal action, and finally there is this legal action.

Overtime demands were brought in the form of an action on August 20, 2007 in which several workers refused to work and picketed Wild Edibles along with supporters from the Industrial Workers of the World. While these complaints lacked the formality of judicial proceedings they were clearly far more formal than a mere assertion a wage was unfair.

### RETALIATION CLAIMS VALID UNDER NYS LABOR LAW

Plaintiff's claims of retaliation are covered under New York State Labor Law § 215(1) which states, "[n]o employer or his agent, or the officer or agent of any corporation, shall discharge, penalize, or in any other manner discriminate against any employee because such employee **has made a complaint to his employer**, or . . . has caused to be instituted a proceeding under or related to this chapter…."(*emphasis added*).

Defendants cite *Lai v. Eastpoint Intern., Inc.*, 2000 WL 1234595 (S.D.N.Y. 2000) for the proposition that there is no substantive difference between the FLSA and the NYLL retaliation provisions. Such a contention flies in the face of the language of the statutes and drastically misrepresents the holding in *Lai*. The defendants take the proposition, not litigated by the parties in Lia, that the retaliation provisions in the FLSA and the NYLL are substantially similar.[20] Defendants then take this misinterpretation and force the conclusion that because the language of the retaliation provision is similar the notice requirement must also be similar. This goes far beyond the holding in *Lai* and is unsupported by case law.

In *Jacques v. DiMarzio*, 200 F. Supp. 2d 151 (E.D.N.Y. 2002) an employee confronted her employer with the phrase, "it [is] a state law for workers doing soldering to wear safety goggles." *At* 155  The court was not the least bit troubled that no lawsuit was filed or that no state agency was contacted. The court states, "[i]n order to establish a violation of New York Labor Law §215, [plaintiff] must show that she complained to [defendant] about its violation of the Labor Law and that [plaintiff] was terminated because of her complaints." *At* 162  The court in *Warden v. Squibb*, 840 F. Supp. 203, 208 (E.D.N.Y. 1993), goes on to clarify that, "[u]nder [NYLL] section 215, an employer is prohibited from discharging, penalizing, or in any other manner discriminating against an employee because the employee has *complained to the employer* or the Industrial Commissioner about a violation of labor law." *Emphasis Added* Without any question the notice given to Wild Edibles in the August 20, 2007 meeting falls within the preview of New York State Labor Law.

---

[20] The court explicitly does not reach the conclusion the two laws are governed by the same standard but instead relies on the parties' concessions as to the same. *Lia*, 2000 WL 1234595, *5 (S.D.N.Y. 2000)

## POINT II

## PLAINTIFFS HAVE ESTABLISHED THE

## LIKELIHOOD OF IRREPERABLE HARM

It is well established that an employer's retaliatory acts can irreparably harm employees, particularly where these acts deter potential plaintiffs or potential witnesses from coming forward to challenge the employer's illegal conduct. *See, Holt v. The Cont'l Group, Inc.,* 708 F.2d 87, 91 (2d Cir. 1983)("A retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights …or from providing testimony for the plaintiff in her effort to protect her own rights.  These risks may be found to constitute irreparable injury."); *see also, Garcia v. Lawn,* 805 F.2d 1400, 1405 (9th Cir. 1986)("The claimed violation of the law in this case is retaliatory action for the exercise of Title VII rights, action which, if plaintiff is correct, will have a deleterious effect on the exercise of these rights by others."); *Bonds v. Heyman,* 950 F.Supp. 1202, 1214-15 (D.D.C. 1997), *abrogated on other grounds by Nat'l R.R. Passenger Corp. V. Morgan,* 536 U.S. 101, 105 (2002)("[A] plaintiff who demonstrates that an adverse personnel action is likely to have a chilling effect on other employees who, after witnessing their fellow co-worker's discharge or dismissal, would now refuse to file claims in fear of reprisal, would also meet [the preliminary injunction standard].").

Courts have been particularly willing to find irreparable harm where victims of retaliation are highly visible, such that other plaintiffs or potential witnesses are presumptively aware of the alleged retaliatory acts.  *See, e.g., Segar v. Civiletti,* 516 F.Supp. 314, 320 (D.D.C. 1981)(holding that retaliatory demotion and transfer of "highly visible" plaintiff sends message to others to "know your place, don't challenge management, don't assert your right[s]").  Wild Edibles has a number of closely connected locations.  Mr. Barturen faces retaliatory conduct not just in the

warehouse where the majority of Plaintiffs work but also at each of Wild Edibles retail locations where fellow workers are no longer assigned to help him unload the heavy deliveries of fish. This conduct is visible to all of Wild Edibles' workers, and makes clear the consequences of demanding overtime pay.

## POINT III

## THIS ACTION IS PROPERLY BEFORE THIS COURT AND NOT THE NLRB

Defendants claim that "Plaintiffs and their attorney are deeply involved with a charge of discrimination/retaliation filed with the NLRB"[21] This claim seriously misleads the court as to the nature of the dispute before the NLRB, and the origin of that claim.

The claim against Wild Edibles in front of the NLRB was brought by a representative of the union group the "Industrial Workers of the World- Industrial Union 460/640" ("IWW") and involves efforts by the Defendant to discourage Union activity.[22] Plaintiffs' attorney does not represent IWW.[23] Nor is the IWW a party to this lawsuit.

Defendants own NLRB points out that the IWW has not been certified as a labor representative of the employees.[24] Without question the IWW is not the legal representative of the Plaintiffs in this action.

The instant claim contends the defendants have violated FLSA by paying Plaintiffs a weekly wage thereby denying them overtime pay and that Defendants have retaliated against certain Plaintiffs for demanding their rights under FLSA and NYLL. These claims do not involve attempts by some Plaintiffs to form a union at Wild.

---

[21] Defendants' Memorandum of Law in Opposition to the Request for a Preliminary Injunction and a Temporary Restraining Order p.9.
[22] Rankin Declaration, Exhibit 11
[23] Rankin Declaration ¶25
[24] Rankin Declaration, Exhibit 12

The overlap between Plaintiffs' case and the NLRB dispute involves retaliatory actions which are characterized as a result of either union activity, to the NLRB, or demands under FLSA, in the instant case. Certain Plaintiffs have been involved in substantiating the facts behind IWW's NLRB complaint.[25] However the vast majority of Plaintiffs have not sought any relief through the NLRB, having chosen to file the instant suit.

Defendants argue that the NLRB has jurisdiction over this matter and that the court should stay these proceedings. They base their argument that the NLRB has primary jurisdiction over this matter based on the four (4) part test in <u>National Communications Association, Inc. v American Telephone and Telegraph Company</u>, 46 F.3d 220 (2nd Cir. 1995). The factors are:

(1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;

(2) Whether the question at issue is particularly within the agency's discretion;

(3) whether there exists a substantial danger of inconsistent rulings; and

(4) whether a prior application to the agency has been made.

Even if the primary jurisdiction test applies to this case, the test would simply establish the action is properly in front of this court. The issue of unpaid overtime does not involve technical or policy considerations within the NLRB's expertise. The NLRB was established to handle issues of collective bargaining, not the enforcement of FLSA provisions. As this case is about unpaid overtime, and not union or collective bargaining rights it is not within the NLRB's field of expertise or discretion at all.

The NLRB does have before it some instances of retaliation which are also in front of this court. However there is little likelihood of inconsistent rulings based on this situation. It may be

---

[25] Rankin Declaration, Exhibit 3, Borges

found that the Defendant's retaliatory acts sought both to limit their right to unionize and to keep them from demanding their unpaid overtime.   There would be no contradiction in such a ruling as retaliatory acts could obviously have more than one motivation, and could violate more than one federal statute without contradicting either.  Likewise the Defendants' conduct could be found to violate either or neither statute without contradiction.  This court is not being asked to determine whether Plaintiff's right to form a union was infringed in any way, and the NLRB is not being asked to determine whether the Defendants violated the FLSA in not paying overtime.

A prior application to the NLRB has not been made by these Plaintiffs.  The complaints by the IWW made to the NLRB represent a separate claim, with a separate basis, brought by a separate party not a proceeding to this action.  The contention that this claim should be stayed pending resolution of the complaints before the NLRB is simply an attempt by Defendants to delay facing the consequences of their longstanding violation of the FLSA.  These claims are properly before this court and should be heard and decided by this court.


Dated: New York, New York
       October 18, 2007

                                                Respectfully Submitted,


                                                By:_____
                                                  David B. Rankin, Esq. (DR-0863)
                                                  *Attorney for Plaintiffs*
                                                  350 Broadway, Suite 700
                                                  New York, New York 10013
                                                  t: 212-226-4507