UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
Cesar A. Barturen, Raymundo Lara Molina, Miguel Eduardo Tabara, Marco Antonio Corona, Juan Carlos Molina, Julio Cesar, Moreno Gonzalez, Pedro Hernandez Hernandez, Julio Antonia, Julio Carbonel, Eusebio Santos Ferrosqullo, Jason Borges, Lino Martinez, Juan Jose Pena Farfan, Jose Fernandez, and Jorge Legis Cuyate Carmona on behalf of themselves and all other employees similarly situated as class and collective representatives,

         Plaintiffs,

Case No. 07 Civ. 8127 (LLS)

-against-

Wild Edibles, Inc., 535 Third Avenue LLC, D/B/A Wild Edibles, Richard Martin, And Jonathan Meyer,

         Defendants.
------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER HOLDING DEFENDANTS IN CONTEMPT

David B. Rankin
350 Broadway, Suite 700
New York, New York 10013
(212) 226-4507 (phone)
(212) 658-9480 (fax)

LEVY RATNER, P.C.
80 Eighth Avenue
New York, New York 10011
(212) 627-8100
(212) 627-8182 (fax)

Attorneys for Plaintiffs

170-000-00001

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1
STATEMENT OF FACTS .................................................................................................... 2
THE TRO................................................................................................................................ 3
THE FIRING OF LINO MARTINEZ WITHOUT NOTICE................................................. 3
THE FIRING OF JOSE ANTONIO FERNANDEZ TAVARA WITHOUT NOTICE ........ 4
THE PRELIMINARY INJUNCTION................................................................................... 5
THE FIRING OF PEDRO HERNANDEZ WITHOUT NOTICE ........................................ 5
THE FIRING OF CESAR BARTUREN WITHOUT NOTICE............................................ 6
ARGUMENT.......................................................................................................................... 7
POINT I. DEFENDANTS ARE IN CONTEMPT OF THE TEMPORARY RESTRAINING ORDER AND THE INJUNCTION........................................................................................ 7
   A.  The Standards for Civil Contempt........................................................................ 7
   B.  Defendants' Actions Demonstrate Their Contempt of the TRO and the Injunction .......... 8
      1.  The TRO and Injunction are clear and unambiguous. ..................................... 9
      2.  Proof of Defendants' non-compliance with the TRO and Injunction is Clear and Convincing. ................................................................................................ 11
      3.  Defendants Have Not Made Even a Perfunctory Attempt to Accomplish What Was Ordered. .................................................................................................. 12
CONCLUSION..................................................................................................................... 13

# **TABLE OF AUTHORITIES**

## **CASES**

*Consolidation Coal Co. v. United Mine Workers*,
    683 F.2d 827 (4th Cir. 1982) ............................................................................................8

*Danielson v. United Seafood Workers*,
    405 F.Supp. 396 (S.D.N.Y. 1975) ....................................................................................8

*EEOC v. Sheet Metal Workers' International Association Local 638*,
    753 F.2d 1172 (2d. Cir. 1985) aff'd, 478 U.S. 421 (1986)................................................7

*McComb v. Jacksonville Paper Co.*,
    336 U.S. 187 (1949)....................................................................................................7, 8

*New York Times Co. v. Newspaper and Mail Deliverers' Union of New York and Vicinity*,
    740 F.Supp. 240 (S.D.N.Y. 1980) ....................................................................................8

*New York Times v. Newspaper and Mail Delivers' Union of New York and Vicinity*,
    517 F.Supp. 662 (S.D.N.Y. 1981) ....................................................................................8

*Sunbeam Corp. v. Golden Rule Appliance Co.*,
    252 F.2d 167 (2d Cir. 1958)..............................................................................................8

*United States v. United Mine Workers*,
    330 U.S. 258 (1947).........................................................................................................7

*Vuitton v. Carousel Handbags*,
    592 F.2d 126 (2d Cir. 1979)..............................................................................................8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
Cesar A. Barturen, Raymundo Lara Molina, Miguel Eduardo Tabara, Marco Antonio Corona, Juan Carlos Molina, Julio Cesar, Moreno Gonzalez, Pedro Hernandez Hernandez, Julio Antonia, Julio Carbonel, Eusebio Santos Ferrosqullo, Jason Borges, Lino Martinez, Juan Jose Pena Farfan, Jose Fernandez, and Jorge Legis Cuyate Carmona on behalf of themselves and all other employees similarly situated as class and collective representatives,

Case No. 07 Civ. 8127 (LLS)

                                                          Plaintiffs,

-against-

Wild Edibles, Inc., 535 Third Avenue LLC, D/B/A Wild Edibles, Richard Martin, And Jonathan Meyer,

                                                         Defendants.
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER HOLDING DEFENDANTS IN CONTEMPT

### PRELIMINARY STATEMENT

    This Memorandum of Law, the accompanying Declaration of David B. Rankin, with attached Affidavits of Cesar Barturen, Juan Pena Farfan, and Pedro Hernandez Hernandez, are submitted in support of Plaintiffs' motion to hold Defendants in contempt of the Temporary Restraining Order issued by the Honorable Judge Louis L. Stanton on September 20, 2007 (the "TRO") and the Preliminary Injunction issued by Judge Stanton on December 18, 2007 (the "Injunction").

    Both the TRO and the Injunction forbid Defendants from retaliating against Plaintiffs for demanding overtime pay and require Defendants' counsel to give notice prior to any adverse employment action. The Injunction specifically mandates that Defendants provide Plaintiffs' counsel with three (3) days advance notice of any adverse employment action against any em-

170-000-00001

ployee. Defendants have violated the TRO and the Injunction through numerous retaliatory acts as well as through repeated failures to provide notice per the Court's orders.

Almost immediately following both of this Court's orders, Defendants defied them.[1] On September 26, 2007 - less than a week after the Court issued its TRO - the Defendant fired named Plaintiff Lino Martinez. Again, on October 8, 2007, the Defendant fired named Plaintiff Jose Antonio Fernandez Tavara. Plaintiffs' Counsel was not informed prior to either of these terminations. On December 19, 2007 -- a single day after this Court issued the Injunction -- the Defendant terminated named Plaintiff Pedro Hernandez Hernandez. On December 20, 2007, the Defendant fired lead Plaintiff Cesar Barturen. Again, Plaintiffs' counsel was not given advance notice of any of these adverse employment actions.

In the instant motion Plaintiffs' seek an order of Contempt based on Defendants' failure to provide notice to Plaintiffs' counsel prior to taking adverse employment actions against Plaintiffs or other Wild Edibles, Inc. ("Wild Edibles") employees.

## STATEMENT OF FACTS

Plaintiffs commenced this action on September 17, 2007 alleging Defendants violated state and federal wage and hour laws by, *inter alia*, failing to pay Plaintiffs for all regular and overtime hours worked and by retaliating against Plaintiffs for demanding proper pay.

---

[1] Defendant engaged in other retaliatory actions against named Plaintiffs for their assertion of their rights under both the Fair Labor Standards Act and New York State Labor Law, some of which were additionally in violation of the TRO or the Injunction. Specifically, Defendants retaliated against Jason Borges by terminating him on August 20, 2007; against Raul Molina by terminating him on August 30, 2007; against Julio Cesar Moreno Gonzalez by terminating him on or about the September 1, 2007; and against Marco Antonio Corona by constructively discharging him in September of 2007. Moroever, the named Plaintiff who remains working at Wild Edibles report retaliatory harassment including insults and taunting, being forced work longer hours, being subjected to extremely cold working conditions, being denied assistance in loading and unloading trucks, and being denied work opportunities.

## THE TRO

On September 20, 2007, following a conference at which counsel for Plaintiffs and Defendants were heard, Judge Stanton issued a Temporary Restraining Order

> against the defendants, their agents and employees and all persons acting in concert with them, enjoining them from taking any adverse employment action or terminating the employment of any plaintiff or other employee, any other present employee, for the bringing of this action or for asserting a claim under the Fair Labor Standards Act.

See Transcript of September 20, 2007 Conference Before Hon. Judge Louis L. Stanton, ("Conf. Tr.") p. 19-20, attached to October 18, 2007 Declaration of David B. Rankin ("Rankin II") as Exhibit 6. Judge Stanton noted that Defendants are free to terminate or take adverse employment action against an employee for just cause or reasons not concerned with the assertion of a FLSA claim, but required that they must;

> give plaintiffs' lawyer notice that such an action is contemplated and a day or so to respond if he thinks that it violates the Fair Labor Standards Act.

Conf. Tr. p. 20.

As a point of clarification, Defendants counsel requested that if there is a matter health or safety of an employee, or employee violence, that Defendants be permitted to suspend the employee, notify Plaintiffs' counsel, and not bring him back to work. Conf. Tr. p. 21. Plaintiffs' counsel did not object and Judge Stanton approved that request. Id.

## THE FIRING OF LINO MARTINEZ WITHOUT NOTICE

On September 26, 2007, Defendants terminated named Plaintiff Lino Martinez ("Martinez"), who had worked for Defendant Wild Edibles, Inc. ("Wild Edibles") cutting and preparing fish and seafood since April 3, 2005. See September 27th, 2007 Affidavit of Lino Martinez

170-000-00001

3

("Martinez Aff."), Rankin II, Exhibit 7 ¶¶ 2-3. The prior day, September 25, 2007, at approximately 4:30 AM, Martinez began to experience neck and shoulder pain, and chills, after two and a half hours cutting fish in Defendants' refrigerated warehouse. Defendant Richard Martin directed his managerial employees to lower the temperature in the warehouse after Martinez and his co-workers demanded to be paid overtime in compliance with the law. See Martinez Aff. ¶8.

Martinez's co-worker, "Lalo" Tavera, who is a better English speaker than Martinez, requested Martinez be allowed to go home. The supervisor, Richie, told Tavera that Martinez could leave and Martinez departed at 4:46 AM. When he returned to work at 2:00 AM the following morning, Martinez was fired on the orders of Richard Martin. See Martinez Aff. ¶¶ 12-14, Affidavit of Miguel Eduardo Tavara, Rankin II Exhibit 8, ¶¶ 6-11. Defendant concedes that Martinez reported for work at the regular time on September 26, 2007, yet was not permitted to return to work. See October 18, 2007 Affidavit of Richard Martin ("Martin Affidavit") ¶13.

Defendants' counsel failed to notify Plaintiffs' counsel of Martinez's termination.

### THE FIRING OF JOSE ANTONIO FERNANDEZ TAVARA WITHOUT NOTICE

Jose Antonio Fernandez Tavara ("Fernandez") started working for Wild Edibles in July of 2002. Following his participation in demanding overtime pay he was subjected to harassment for supposedly working too slowly, and for being late to work. He was also threatened with a 10% pay cut. See Affidavit of Jose Antonia Fernandez Tavara ("Fernandez Affidavit"), Rankin Declaration II, Ex. 9 ¶¶ 2, 26-27.

Fernandez called in sick before his shift began on Monday October 8, 2007. He called in again at 5:00 AM mid-way through his shift. Around noon Wild Edibles manager Luis Carbonal told Fernandez's brother Eduardo Tavara that Fernandez was fired. See Fernandez Affidavit ¶¶ 29-30.

170-000-00001

Defendants' counsel failed to notify Plaintiffs' counsel of Fernandez' termination prior to the discharge. In fact it was Plaintiff's counsel who notified the Defendant's counsel of the firing. See Rankin II ¶ 18.

## THE PRELIMINARY INJUNCTION

On December 18, 2007 this Court issued a Preliminary Injunction in this case. The Injunction, *inter alia*, enjoined Defendants and their agents

> from taking any adverse employment action against, or terminating the employment of, any plaintiff or other employee without providing plaintiffs' counsel with three days' prior notice, except that defendants may suspend an employee with notice one day thereafter to plaintiffs' counsel when suspension is urgently necessary as a matter of health, safety or to avoid threatened violence.

Injunction, at 17.

The Injunction substantially mirrored the provisions of the TRO already in place. Notably it maintained a notice requirement for *any* adverse employment action *or* for termination.

## THE FIRING OF PEDRO HERNANDEZ WITHOUT NOTICE

Plaintiff Pedro Hernandez Hernandez ("Hernandez") left work early from work on Monday December 17, 2007 because he was sick. He called in sick the following day. Upon returning to work on December 19, 2007, he was told he was fired. Affidavit of Pedro Hernandez Hernandez ("Hernandez Affidavit"), Declaration of David B. Rankin in Support of Plaintiff's Motion for Contempt ("Rankin III"), Ex.1 ¶¶ 6-8.

Plaintiff's counsel's office notified Defendants' counsel of Hernandez's termination via email on Wednesday, December 19, 2007. See Rankin III, Ex.2, December 19 email of Mark Taylor. The next day Defendants' counsel claimed that Hernandez was "only suspended." See Rankin III, Ex.2, December 20, 2007 1:56 PM email of Richard M. Howard. Whether Hernan-

dez was suspended or, as he was told, fired, it is beyond dispute that there was no notice by Defendants' counsel for the negative employment action against Hernandez on December 19, 2007.

Following Defendants' claim that Hernandez was suspended and not fired, Hernandez returned to work on Monday December 24, 2007. On Wednesday December 26 he was again told by Wild Edibles manager Richie that he was fired. See Hernandez Affidavit ¶¶ 10-11. Regardless of whether Hernandez was suspended or terminated on December 19, 2007, the fact remains that it was not until December 20, 2007, after prompted by Plaintiffs' counsel's inquiry, that Defendants' counsel communicated the adverse employment action had occurred. See Rankin III ¶ 4-5.

### THE FIRING OF CESAR BARTUREN WITHOUT NOTICE

Plaintiff Cesar Barturen ("Barturen") worked for Wild Edibles for more than nine (9) years. At the time the instant action was filed Barturen was employed by Defendant Wild Edibles as a local delivery driver. Following his participation in demanding legally required overtime compensation, Barturen endured numerous instances of retaliation at the hands of his employer. Barturen was subjected to poor working conditions by being forced to load and unload his truck without help he had previously received. See Rankin III, Exhibit 4, Affidavit of Cesar Barturen ("Barturen II") ¶¶ 40-43. He was wrongfully accused of stealing fish and scallops, for the first time in his nine (9) year tenure with Wild Edibles Id. ¶¶ 29-37. In addition, managers for Wild Edibles sent a monitor with Barturen while he was performing his daily job duties. See Barturen II ¶ 39, Martin Affidavit ¶32.

Upon arriving at work on December 20, 2007, Defendant Richard Martin told Barturen he was fired because of a parking ticket he allegedly received. Defendant Richard Martin stated "[Y]ou're fired for this ticket." See Barturen II, ¶¶ 24-40. In a phone call on that day Defen-

170-000-00001

6

dants' counsel Thomas Bianco claimed Barturen had been suspended. See Rankin III ¶ 8. On December 21, 2007-- the day *after* he was actually terminated -- Defendants' counsel informed Plaintiffs' counsel the "intended termination of Cesar Barturen" was to occur that day. See Rankin Declaration III, Ex.3, Thomas Bianco's email of December 21, 2007. In fact Barturen had been terminated the prior day, without notice to counsel. Even if, as Defendants' counsel has maintained, Barturen was suspended, that suspension had come without notice.

## ARGUMENT

### POINT I.
### DEFENDANTS ARE IN CONTEMPT OF
### THE TEMPORARY RESTRAINING ORDER AND THE INJUNCTION

Defendants have repeatedly defied a clear Court order. Pursuant to the TRO and the Injunction, Defendants were required, before issuing any discipline, to allow Plaintiffs to continue their employment and notify Plaintiffs' counsel regarding any suspensions, terminations or other adverse employment action. Instead Defendants have acted without restraint or consideration of this Court's clear instructions.

### A.    THE STANDARDS FOR CIVIL CONTEMPT

Federal courts have the power to coerce obedience to their orders and to impose sanctions necessary to compel obedience. United States v. United Mine Workers, 330 U.S. 258, 303-04, 330-32 (1947); McComb v. Jacksonville Paper Co., 336 U.S. 187, 191-94 (1949). In EEOC v. Sheet Metal Workers' Int'l Ass'n Local 638, 753 F.2d 1172, 1178 (2d. Cir. 1985), aff'd, 478 U.S. 421 (1986), the Second Circuit set forth the standards for determining when a party may be held in civil contempt:

> It is well settled in this circuit that a party may be held in civil contempt for failure to comply with an order of the court if the order being enforced is "clear and unambiguous, the proof of noncom-

170-000-00001

>pliance is 'clear and convincing,'" and defendants have not been reasonably diligent and energetic in attempting to accomplish what was ordered.

(citations omitted.)

Civil contempt sanctions may be employed for two purposes: to coerce defendants into compliance with the court's order and/or to compensate plaintiffs for losses sustained. New York Times Co. v. Newspaper and Mail Deliverers' Union of New York and Vicinity, 1992 WL 110721 at *1, quoting Local 28 of the Sheet Metal Workers' Int'l Ass'n v. EEOC, 478 U.S. at 443 (citations omitted). See also McComb v. Jacksonville Paper Co., 336 U.S. at 191; Consolidation Coal Co. v. United Mine Workers, 683 F.2d 827, 830 (4th Cir. 1982)("the gist of criminal contempt is to punish past behavior, while the essence of civil contempt is to coerce future behavior").

Thus, upon a finding of contempt, the court may award compensatory damages to the applicant and fashion an equitable remedy -- which may include the imposition of fines for any future violations of the order -- in order to coerce future compliance. Vuitton v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979); New York Times Co. v. Newspaper and Mail Deliverers' Union of New York and Vicinity, 1992 WL 110721 at *3. See also Sunbeam Corp. v. Golden Rule Appliance Co., 252 F.2d 167, 470 (2d Cir. 1958); Danielson v. United Seafood Workers, 405 F.Supp. at 403; New York Times v. Newspaper and Mail Delivers' Union of New York and Vicinity, 517 F.Supp. 662, 666 (S.D.N.Y. 1981)(Grisea, J.); Local Civil Rule 83.9.

### B. DEFENDANTS' ACTIONS DEMONSTRATE THEIR CONTEMPT OF THE TRO AND THE INJUNCTION

Each of the prerequisites for a finding of civil contempt is satisfied here. On September 20, 2007, the Court issued a TRO enjoining Defendants from taking any adverse employment

170-000-00001

8

action or terminating the employment of any plaintiff or other employee for the bringing of this action or for asserting a claim under the Fair Labor Standards Act. The Court further ordered Defendants to give advance notice to Plaintiffs' counsel if it contemplates taking any adverse action against any Plaintiff or other employee, giving Plaintiffs' counsel the opportunity to object to the action on the grounds that it would violate FLSA. The Court later reiterated and more clearly defined the notice requirement in its preliminary injunction on December 20, 2007.

Yet, Defendants terminated Martinez and Fernandez without providing the required advance notice to Plaintiffs' counsel, and later, Defendants discharged Hernandez and Barturen without providing proper notice to Plaintiffs' counsel.

### 1.   The TRO and Injunction are clear and unambiguous.

As an initial matter, there can be no dispute that the terms of the TRO and Injunction are "clear and unambiguous." The TRO explicitly prohibits Defendants from firing any Plaintiff or other employee unless they provide Plaintiff's counsel with advance notice and the opportunity to object to the termination.

It is also worth noting that, to the extent Defendants believed any of the terms to be ambiguous or unclear, Defendants' counsel had the opportunity to and did in fact request clarification. At the September 20, 2007 Conference, after stating the terms of the TRO, Judge Stanton asked,

> Does that leave anything unclear to anybody?
>
> MR. HOWARD:  I just have one question.
>
> THE COURT:    Sure
>
> MR. HOWARD:  If there is a matter of health safety.
>
> THE COURT:    Yes.

170-000-00001

9

>MR. HOWARD:    Concerning an employee.
>
>THE COURT:     Yes, or violence.
>
>MR. HOWARD:    Yes. I would ask that we be permitted to suspend the employee and notify the plaintiffs' counsel and not have to bring him back to work the next day under those circumstances.
>
>THE COURT:     Any objection?
>
>MR. RANKIN:    No objection.
>
>THE COURT:     So Ordered.

Conf. Tr. p. 21.

Thus it is clear that Defendants' counsel understood that, except in situations implicating safety and health and/or employee violence, Defendants were required, prior to terminating any employee, to notify Plaintiffs' counsel and give them the opportunity to raise objections before the termination took effect.

Like the TRO, the Injunction is clear in its Order to Defendants. Pursuant to that Order, Defendants were;

> enjoined from taking any adverse employment action against, or terminating the employment of, any plaintiffs or other employee form bringing this action or for complaining that defendants failed to pay them wages in violation of the [FLSA] or the New York Labor Law; and that
>
> [Defendants and their agents] are further restrained and enjoined form taking any adverse employment action against, or terminating the employment of, any plaintiff or other employee without providing plaintiffs' counsel with three days' prior notice[.]

Injunction, at p. 17. Defendants cannot plausibly maintain they were in any way uncertain about the Court's order, given the Court's clear and unambiguous directive. While there are numerous

170-000-00001

10

issues of fact in regards to the retaliatory motivation of Defendants actions there is no question about that fact that negative employment actions were inflicted upon named Plaintiffs in violation of the court's TRO and Injunction. Indeed, at a February 22, 2008 conference before your Honor, Richard Howard, counsel for Defendant, admitted that he had not provided Plaintiffs' counsel with the notice required by the court. Rankin Aff., ¶ 13.

### 2. Proof of Defendants' non-compliance with the TRO and Injunction is Clear and Convincing.

It is beyond dispute that Defendants took adverse employment actions against Plaintiffs Martinez, Fernandez, Hernandez, and Barturen without providing the requisite notice to Plaintiffs' counsel. As noted above, Defendants' counsel admitted at the February 22, 2008 conference, that he never gave Plaintiffs' counsel the requisite notice. Id.

On September 26, 2007 Plaintiff Martinez was terminated. In accordance with the TRO notice should have been provided to Plaintiffs' counsel at least by September 25, 2007. Instead no notice was provided. On October 8, 2007 Fernandez was terminated. According to TRO notice should have been provided to Plaintiff's counsel by October 7, 2007, instead it was Plaintiff's counsel who provided Defendant's counsel with notice of the incident. On December 19, 2007 Hernandez was fired. In accordance with the Injunction notice should have been provided to Plaintiffs' counsel by December 16, 2007. Instead on December 20, 2007 Defendants' counsel claimed that Hernandez had been suspended, and not terminated, without explanation for why no notice had been given for the suspension. On December 20, 2007 Defendant Richard Martin told Plaintiff Barturen that he was fired. In accordance with the Injunction notice should have been provided to Plaintiffs' counsel by December 17, 2007. Instead Defendants' counsel gave

170-000-00001

11

notice on December 20, 2007 that Barturen was going to be suspended pending termination, without acknowledging the fact that Barturen had already been told he was fired.

Accordingly, Defendants' non-compliance with this Court's Orders is supported by clear and convincing evidence.

### 3. Defendants Have Not Made Even a Perfunctory Attempt to Accomplish What Was Ordered.

The clarity of the Court's Order -- to provide Plaintiffs' counsel with a mere three (3) days notice of any adverse employment action -- emphasizes the undeniable conclusion that Defendants made no effort to comply with either the TRO or the Injunction. It would have been very simple for Defendants to notify Plaintiffs' counsel of the discharges and other adverse employment actions discussed above. Adequate notice would have allowed Plaintiffs' counsel to investigate issues related to the adverse actions and raise appropriate objections. Rather, in direct contravention of this Court's order, Defendants terminated the workers first and notified Plaintiffs' counsel later. There is no suggestion that any of the negative employment actions taken by Wild Edibles were beyond the control of Defendant Richard Martin, or related in any way to health and safety or employee violence. Absent any material issues of fact regarding the lack of notice before these negative employment actions this court should find Defendants in contempt.

The Injunction clearly requires Defendants' counsel to, before issuing any discipline, to allow Plaintiffs to continue their employment, and provide Plaintiffs' counsel three (3) days advance notice of any adverse employment action. Having failed to do that, Plaintiffs are entitled to three (3) days pay as damages for Defendants' violation of the Court's order.

170-000-00001

## CONCLUSION

For all of the foregoing reasons, Defendants are in contempt of the TRO issued on September 20, 2007 and the Injunction of December 18, 2007. Accordingly, Plaintiffs respectfully request that the Court (1) enter an order holding Defendants in contempt and setting a schedule of coercive fines to be levied for any prospective violation of the Court's orders; (2) grant the Plaintiffs' claim for damages (including costs and attorneys' fees); and (3) grant such further relief as the Court may find appropriate.

Dated: April 24, 2008
      New York, New York

Respectfully submitted,

By: David B. Rankin (DR-0863)
350 Broadway, Suite 700
New York, New York 10013
(212) 226-4507 (phone)
(212) 658-9480 (fax)
David@DBRankinLaw.com

LEVY RATNER, P.C.

By: /s/ Allyson L. Belovin (AB3702)
80 Eighth Avenue
New York, New York 10011
(212) 627-8100
(212) 627-8182 (fax)
abelovin@lrbpc.com

Attorneys for Plaintiffs

170-000-00001

13