UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Cesar A. Barturen, Jason Borges,
Raul Lara Molina, Raymundo Lara Molina,
Miguel Eduardo Tabara, Marco Antonio
Corona, Juan Carlos Molina, Julio Cesar
Moreno Gonzalez, Pedro Hernandez
Hernandez, Julio Antonio, Julio Carbonel,
Eusebio Santos Ferrosqullo, Limo
Martinez, Juan Jose Pena Farfan,
Jose Fernandez, and Jorge Legis Cuyate
Carmona on behalf of themselves and all
other employees similarly situated as class
and collective representatives,

07-CV-8127 (LLS)

               Plaintiffs,

Wild Edibles, Inc., 535 Third Avenue
LLC, d/b/a Wild Edibles, Richard Martin,
and Jonathan Meyer,

               Defendants.

## AFFIDAVIT IN OPPOSITION TO PLAINTIFFS' MOTION TO HOLD THE DEFENDANTS IN CONTEMPT

STATE OF NEW YORK}
               S.S.
COUNTY OF QUEENS}

Richard Martin, being duly sworn, does hereby depose and say:

### Introduction

1.    I am a named Defendant and officer of the defendant companies named

herein. I make this Affidavit to explain to the Court the actions taken by

myself and my companies and our absence of contumacious behavior. I

would like to assert from the outset, that it has been the intention of the

Defendants to fully comply with this Court's order. Aside from one innocent mistake concerning a suspension, we have done so.

2.  Plaintiffs seek the instant order of contempt, apparently based upon the discharges of Cesar Barturen and Pedro Hernandez.

3.  Mr. Barturen was discharged three (3) days after notice was provided to Plaintiffs' counsel in accordance with the Court's order.

4.  Mr. Barturen was discharged not merely because he received a parking ticket with a company truck. Mr. Barturen was discharged because he received the ticket for being asleep in his double parked truck while he was supposed to be working and for failing to advise his employer he ever received the ticket.

5.  While Plaintiffs' counsel received the required notice, no response was received concerning the discharge until well after its effective date.

6.  Contrary to Plaintiffs' allegations, Pedro Hernandez was not discharged by the Defendants in December of 2008. Mr. Hernandez was discharged on March 10, 2008, after he threatened to eviscerate another employee with a fish hook. Plaintiffs' counsel has not complained about Mr. Hernandez' actual discharge or the notice provided for same.

7.  Plaintiffs have provided to the Court a remarkably disingenuous version of the events, failing to include critical correspondence between counsel and failing to advise the Court of all salient facts. I hope this Affidavit can correct same.

8.  By way of example, concerning the alleged termination of Pedro Hernandez in December of 2007, Plaintiffs failed to include e-mail from my counsel explaining what Mr. Hernandez told us. The fact that Mr. Hernandez asserted

434401-1

that he knew he was not fired, but rather asserted that a judge (identified as either Judge Stanton or "the immigration judge") told him he could not come to work, is a rather important point to ignore.

9. Similarly, I am advised that my counsel advised the Court that on one occasion he had advised his client that suspensions were not subject to prior notice, explaining the one innocent mistake that could have been considered a violation of the order, which was promptly corrected. It is similarly disingenuous for Plaintiffs' counsel to assert that Mr. Howard "admitted that negative employment actions had been taken by Defendants without the required notice..." Plaintiffs' counsel transposes the singular into the plural and fails to note the context. Mr. Howard spoke regarding a specific suspension, having nothing to do with the two alleged discharges (only one of which was even a discharge) in question.

10. In sum, Plaintiffs point to one actual discharge for which notice was admittedly provided and one purported discharge: (a) that never actually occurred; (b) in which the employee in question returned to work for the Defendant; (c) in which the employee in question was eventually discharged for threatening another employee's life; (d) for which notice was provided to Plaintiffs' counsel; and (e) resulting in the absence of any complaint from Plaintiffs' counsel.

11. Plaintiffs' other complaints regarding the temperature in a fish warehouse and the time it took for Mr. Barturen to complete his route are equally meritless. The warehouse in question has been investigated by the Occupational Safety

and Health Administration ("OSHA"). Its temperature has remained constant and no violations have been found.

12.  Similarly, while Mr. Barturen asserts that he was denied assistance in loading his truck, causing him to take longer to complete his route, he did not require additional hours during the week to perform his duties. Perhaps, assuming *arguendo*, the accuracy of his allegation, the Defendants cut into his nap time. In any event if it now only takes one person to perform a task previously allegedly performed by two. Consequently, all that would have occurred (if Mr. Barturen was accurate) was an increase in desired productivity. In any event, nothing actually changed and, interestingly, Mr. Barturen's former route is now completed in far less time than was previously required.

## Pedro Hernandez was not Discharged in December of 2007

13.  Attached hereto as Exhibit "A" is a copy of the December 19, 2007 e-mail from Thomas Bianco to David Rankin that was conspicuous in its absence from the instant motion. In salient part this e-mail establishes that Mr. Hernandez left work early on or about December 18, 2007 and was then a "no call – no show" on or about December 19, 2007.[1]

14.  Attached hereto as Exhibit "B" is a copy of a letter from Richard Howard to David Rankin (e-mailed by Thomas Bianco on December 21, 2007 setting forth in no uncertain terms that Mr. Hernandez was not discharged, but that he could not continue to be a "no call – no show."

---

[1]/  I note that the Court's order in question was issued December 18th. At the time Mr. Bianco initially responded to Mr. Rankin, he did not even know the written order had been issued.

434401-1

15. Attached hereto as Exhibit "C" is a December 28, 2007 e-mail from Richard Howard to David Ranking establishing that prior to December 28, 2008, Mr. Hernandez had been advised to return to work (i.e., that he had not been discharged) but that he came to work to pick up his paycheck and advised me (through an interpreter) that he was directed to stay out of work by a judge, initially identifying the judge as this Court and then an "immigration judge."

16. Of equal importance, the e-mail specifically asks whether Mr. Hernandez intends to return to work, again emphasizing that "no call – no show" cannot be tolerated. No response was received until settlement negotiations resumed. Mr. Hernandez then resumed working until threatening the life of a co-employee.

17. I respectfully submit that it is evident from the e-mail provided by Plaintiffs' counsel and more evident from the e-mail Plaintiffs' counsel chose not to include that Mr. Hernandez was neither discharged, nor the subject of any adverse employment action until March 10, 2008

18. Mr. Hernandez' subsequent actual discharge, however is not the subject of this motion. Rather only a non-action that occurred in December of 2007 (the same time Mr. Barturen was discharged) is the subject of this May 2008 motion.

19. Consequently, no basis exists for holding the Defendants in contempt concerning Mr. Hernandez' non-discharge in 2007 or actual eventual discharge in 2008.

## The Discharge of Mr. Barturen did not Violate the Court's Order

20.   It is interesting that in his affidavit in support of the instant motion, Mr.
      Barturen never denies sleeping in the company truck on company time while
      double parked. While he asserts no knowledge of receiving the ticket, he
      never denies that a traffic enforcement agent could have legitimately found
      him sleeping in the double parked truck. One could only make such a denial,
      if one had never done so. Apparently, Mr. Barturen is not in such a position.
      Attached hereto as Exhibit "D" is a copy of the summons Mr. Barturen's
      vehicle received.

21.   Instead, Mr. Barturen categorizes the event as a discharge for merely
      receiving a parking ticket, a minor incident compared to another driver who
      was not discharged although his truck was impounded.

22.   There are two significant problems with Mr. Barturen's version of the events:
      (a) he was not discharged for simply receiving a parking ticket; and (b) no
      Defendants' truck has been impounded. This complete lack of factual premise
      renders Mr. Barturen's position meritless.

23.   Mr. Barturen was discharged upon the requisite notice. The basis of his
      discharge was for sleeping on company time, while double parked, resulting
      in his receipt of a summons, which he did not provide to his employer,
      increasing the amount of the summons. There are two (2) likely explanations
      for why Mr. Barturen was unaware of the summons: (a) he intentionally hid
      same from his employer; or (b) he was so sound asleep when it was received
      that he was unaware of same and it was lost before he awoke.

434401-1

24. Giving Mr. Barturen every benefit of the doubt, his theft of time from his employer provides just cause for his discharge.

25. Notice to Plaintiffs' counsel is undisputed and attached to Plaintiffs' moving papers.

26. Consequently, no basis exists for holding the Defendants in contempt concerning Mr. Barturen's discharge.

## Wild Edibles has not acted in a Contumacious Fashion or Retaliated Whatsoever

27. Attached hereto as Exhibit "E" are copies of the temperature measurements for the Wild Edibles warehouse provided to OSHA back in October of 2007, after the Plaintiffs initially complained of the seafood warehouse being cold.

28. Attached hereto as Exhibit "F" is a copy of the letter from OSHA advising the Defendant of the allegations.

29. The temperatures have not changed. They cannot as they are mandated by the Hazard Analysis and Critical Control Point ("HACCP") plan of the Food and Drug Administration to assure food safety for consumers. Attached hereto as Exhibit "G" is the New York State Department of Environmental Conservation Bureau of Fish, Wildlife and Marine Resources Shellfish Inspection Checklist Form for the Defendants' seafood warehouse on September 26, 2007.

30. In sum, the Plaintiffs, their putative union and its agent, Brandworkers International have done everything in their power to destroy the Defendants, including the subject motion. Each agency to whom they have reported has found the Defendants both cooperative and compliant. Plaintiffs have no

shortage of allegations; they are, however, baseless allegations, "full of sound and fury, signifying nothing."

**Conclusion**

31.   Plaintiffs have established nothing in the subject motion other than their willingness to try to deceive this Court. There is no basis whatsoever for the allegations against the Defendants.

32.   Plaintiffs point to their number no longer in the Defendants' employ. Perhaps Plaintiffs should consider coming to work, not stealing time from their employer, not threatening to kill their co-employees, etc. Behaviors such as these would greatly assist their employment longevity, particularly the first behavior. I truly fail to see how the Defendants can be at fault when Plaintiffs simply fail to come to work.

33.   In any event, Defendants have not acted contumaciously and respectfully submit that no basis exists for holding Defendants in contempt.

Wherefore, it is respectfully requested that Plaintiff's motion for contempt be denied in its entirety and that Defendants be awarded such other and further relief as this Court deems just and proper.

Richard Martin

Sworn to before me this
4th day of June, 2008

Notary Public

MATTHEW HOVEY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01HO6174815
Qualified in Queens County
My Commission Expires September 24, 2011

434401-1

# EXHIBIT "A"

**Thomas J. Bianco**

| | |
|---|---|
| **From:** | Thomas J. Bianco |
| **Sent:** | Wednesday, December 19, 2007 1:49 PM |
| **To:** | 'Mark Taylor' |
| **Subject:** | RE: Pedro Hernandez |

Mark, sorry for the late response... I was away last week in Disneyworld, and as we landed back in NY my father in law had some sort of attack, putting him in hospital where he remains... so I did not return to work until today...

I did get a phone message saying that Pedro Hernandez had been permitted to leave work a bit early complaining about a headache, and then did not return to work the next day or call in to let anyone know he would not be in ....under the circumstances I did not get a chance to follow up..

Let me do that and I will get back to you shortly. ....

*Thomas J. Bianco, Esq.*
*Meltzer, Lippe, Goldstein & Breitstone, LLP*
*190 Willis Avenue*
*Mineola, N.Y. 11501 (516) 747-0300 x178*

This electronic message transmission contains information which is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or distribution of this communication to other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately by calling (516) 747-0300 or by electronic mail to HYPERLINK "BLOCKED::mailto:info@meltzerlippe.com). "info@meltzerlippe.com. Thank you.

-----Original Message-----
**From:** markthetaylor@gmail.com [mailto:markthetaylor@gmail.com] **On Behalf Of** Mark Taylor
**Sent:** Wednesday, December 19, 2007 10:23 AM
**To:** Richard M. Howard; Thomas J. Bianco; David Rankin
**Subject:** Pedro Hernandez

Gentlemen,

I have received word that one of our clients, Pedro Hernandez, has been either suspended or fired from his employment with Wild Edibles. I would appreciate it if you could look into this matter and let us know what is going on.

-Mark Taylor
Law Office of David B. Rankin

# EXHIBIT "B"

**Thomas J. Bianco**

| | |
|---|---|
| **From:** | Thomas J. Bianco |
| **Sent:** | Friday, December 21, 2007 12:18 PM |
| **To:** | 'David Rankin' |
| **Cc:** | Richard M. Howard; 'richm@wildedibles.com' |

**Subject:** Pedro Hernandez

David: I have been advised that Mr. Hernandez left work early, complaining of a headache and did not report for work the next day. I am further advised that while Mr. Hernandez stated that he tried to call and received a busy signal, I am told this is not possible due to the nature of the phone system at Wild Edibles. I am also told that Mr. Hernandez stated that he subsequently left a message, yet while other messages were left that day, no message from Mr. Hernandez could be located. Obviously the "no call no show" is not acceptable, nor made more tolerable by the apparent prevarication. Nonetheless, Mr. Hernandez remains employed by Wild Edibles.

More succinctly, Mr. Hernandez has not been discharged and is expected to return to work on Monday. This should not be taken as an indication that this behavior will be tolerated in the future. To the contrary, should Mr. Hernandez fail to arrive for work when scheduled, without advising his employer in advance of a good and bona fide reason for his forthcoming absence, he will be subject to further discipline, up to and including discharge.

I am also advised that Mr. Hernandez has displayed a history of "pushing the envelope" and then questioning whether he has been discharged. Tom told me he got a call from Billy Randle previously regarding a prior incident where Mr. Hernandez incorrectly considered himself discharged.

David, in other words, this is strike two for Mr. Hernandez. If he does not want to work at Wild Edibles, why not leave as a gentleman, providing proper notice, etc. If he wants to continue his employment with Wild Edibles, he should come to work when scheduled and behave properly in the workplace.

Notwithstanding the above, I appreciate our ability to work together to resolve this situation and remain hopeful of an amicable resolution to the litigation.

Richard M. Howard, Esq.
Meltzer, Lippe, Goldstein & Breitstone, LLP
Long Island's Business Law Firm
(516) 747-0300 x224

*Thomas J. Bianco, Esq.*
*Meltzer, Lippe, Goldstein & Breitstone, LLP*
*190 Willis Avenue*
*Mineola, N.Y. 11501 (516) 747-0300 x178*

This electronic message transmission contains information which is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or distribution of this communication to other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately by calling (516) 747-0300 or by electronic mail to HYPERLINK "BLOCKED::mailto:info@meltzerlippe.com). "info@meltzerlippe.com. Thank you.

4/7/2008

# EXHIBIT "C"

## Richard M. Howard

| | |
|---|---|
| **From:** | Richard M. Howard |
| **Sent:** | Friday, December 28, 2007 11:46 AM |
| **To:** | 'David Rankin' |
| **Cc:** | Thomas J. Bianco |
| **Subject:** | Pedro Hernandez |

David: As you know, Tom was far more involved regarding Mr. Hernandez than I have been. I received a call today, however, from Rich Martin concerning Mr. Hernandez. I am advised that Mr. Hernandez neither called nor appeared for work today, although Mr. Martin had specifically advised him to come to work today. When Mr. Hernandez came in to pick up his paycheck, Mr. Martin asked him (through an interpreter) why he did not come to work and was advised that the Judge told him not to come to work today. In response to being asked what judge, I am advised that he responded on one occasion by asserting the same judge downtown that Mr. Martin and he attended for the FLSA case (i.e., Judge Stanton) and on another occasion the "immigration judge."

I don't know what is going on concerning Mr. Hernandez in the workplace. I am sure that he and his supervisor have different viewpoints concerning same. Regardless, however, no call no show cannot be tolerated. PLease let me know as soon as possible whether Mr. Hernandez intends to return to work. I would also appreciate it if you could advise me as to any judge visited by Mr. Hernandez.

Thanks, Rich

# EXHIBIT "D"

# NYCServ Violation Copy
### Internet

## The City of New York
## Notice of Parking Violation

THE NYC DEPARTMENT OF FINANCE MUST RECEIVE YOUR ANSWER TO THIS NOTICE WITHIN THIRTY
(30) DAYS FROM THE OFFENSE OR YOU WILL BE SUBJECT TO AN ADDITIONAL $10 PENALTY. YOU CAN
RESPOND BY MAIL, THROUGH THE INTERNET, OR IN PERSON. FAILURE TO ANSWER AS REQUIRED
SHALL BE DEEMED AN ADMISSION OF LIABILITY. ADDITIONAL PENALTIES WILL BE CHARGED AND A
DEFAULT JUDGMENT MAY BE ENTERED AGAINST YOU. VEHICLES OWNED BY PERSONS WITH
OUTSTANDING DEFAULT JUDGEMENTS MAY BE TOWED.

N/S=Not Shown
N/A=Not Applicable

| Permit Displayed | Permit Number | Type |
|---|---|---|
| N/S | N/A | N/A |

Name of the Operator, if present. If not present:
OWNER OF THE VEHICLE BEARING LICENSE

| Plate | CD | Exp. Date | State | Plate Type |
|---|---|---|---|---|
| 29891JB | 7 | 03/31/08 | NY | COM |
| Make | Color | | Year | Body Type |
| FORD | WH | | 2000 | VAN |

VIN #
1FTRE1427YHA41118

THE OPERATOR AND OWNER OF THE ABOVE VEHICLE ARE CHARGED AS FOLLOWS:

In Violation of Sect. 4-08 (Subsect. Below) of NYC Traffic Rules

Double Parking-Midtown (1)(2)
DAYS/HRS: Mon - Fri/ 7 A- 6 P

Place of Occurrence

S/S E 43rd St
60ft W/of Lexington Ave

| VC | Meter # | Operational | Limit | County | Pct. |
|---|---|---|---|---|---|
| 47 | | | | NY | 017 |

| Date/Time of Offense | Date/Time 1st Observed |
|---|---|
| 09/19/07 10:01 AM | N/A |

Complainant's Comments:

WAS DOZKNG OFF

FINE AMOUNT:  $ 115.00

| Agency | Command | Tax Reg # |
|---|---|---|
| TRAFFIC | T-503 | 333163 |

Complainant's Name

K. ANDERSON

Signature of Complainant

I affirm under penalty of perjury (Penal Law 210.45) that I personally observed the offense charged above, if
this operator was present I indicated the operator's name or indicated "ID Refuse" and personally served
this Notice upon him/her, if the operator was not present or refused to accept personal service of this Notice,
I affixed this Notice to the vehicle.

X _____

7286-5865-0

Fri, Dec 21, 2007 07:51 AM

# EXHIBIT "E"

# SHELLFISH COOLER TEMPERATURE MONITORING RECORD

**FOR MONTH OF:** SEPTEMBER   **YEAR:** 2007

**COMPANY NAME:** WILD EDIBLES

**ADDRESS:** 21-51 BORDEN AVE
LONG ISLAND CITY, NY 11101

| DATE | TIME | TEMP | INITIALS | TIME | TEMP | INITIALS | WEEKLY REVIEW SIGNED & DAT |
|------|------|------|----------|------|------|----------|----------------------------|
| 9/1 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/2 | | | | | | | |
| 9/3 | | | | | | | |
| 9/4 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/5 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/6 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/7 | 3 AM | 38 | M | 5 AM | 40 | M | Robt A Sly |
| 9/8 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/9 | | | | | | | |
| 9/10 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/11 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/12 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/13 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/14 | 3 AM | 38 | M | 5 AM | 40 | M | Robt A Sly |
| 9/15 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/16 | | | | | | | |
| 9/17 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/18 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/19 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/20 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/21 | 3 AM | 38 | M | 5 AM | 40 | M | Robt A Sly |
| 9/22 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/23 | | | | | | | |
| 9/24 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/25 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/26 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/27 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/28 | 3 AM | 38 | M | 5 AM | 40 | M | Robt A Sly |
| 9/29 | 3 AM | 38 | M | 5 AM | 40 | M | |
| 9/30 | | | | | | | |
| 9/31 | | | | | | | |

**STORAGE THERMOMETER CALIBRATION**

**DATE CALIBRATED:** 9/7/2007

**ACTUAL READING:** 380

**CHECKER'S INITIALS:** M

**PROBE THERMOMETER CALIBRA**

**DATE CALIBRATED:** 9/7/2007

**ACTUAL READING:** 300

**CHECKER'S INITIALS:** M

# EXHIBIT "F"

**U.S. Department of Labor**

Occupational Safety and Health Administration
Queens District Office
45-17 Marathon Park Way, 2nd Floor
Little Neck, New York 11362
(718) 279-9060
(718) 279-9057 (Fax)
OSHA Website Address: http://www.osha.gov

October 1, 2007

Matt Hovey, Buyer
Wild Edibles
21-51 Borden Avenue
Long Island City, NY 11101

Re: Wild Edibles
    Complaint No. 205900756

Dear Mr. Hovey:

On 09/26/2007, the Occupational Safety and Health Administration (OSHA) received a notice of (safety and/or health) hazards at your worksite at:

    21-51 Borden Avenue
    Long Island City, NY 11101

We notified you, by telephone, of these alleged hazards on 10/01/07. The specific nature of the alleged hazards is as follows:

- Employees are exposed to and have become ill due to the low temperatures in the refrigeration units.
- Employees have not been supplied personal protective equipment for use in the refrigeration units.

We have not determined whether the hazards, as alleged, exist at your workplace; and we do not intend to conduct an inspection at this time. However, since allegations of violations and/or hazards have been made, we request that you immediately investigate the alleged conditions and hazards and make any necessary corrections or modifications. Please advise me in writing, no later than 10/10/07 of the results of your investigation. You must provide supporting documentation of your findings, including any applicable measurements or monitoring results, and photographs/video which you believe would be helpful, as well as a description of any corrective action you have taken or are in the process of taking, including of the corrected condition.

This letter is not a citation or a notification of proposed penalty which, according to the OSH Act, may be issued only after an inspection or investigation of the workplace. It is our goal to assure that hazards are promptly identified and eliminated. Please take immediate corrective action where needed. We encourage employee participation in investigating and responding to any alleged hazard. If we do not receive a response from you by 10/10/07 indicating that appropriate action has been taken or that no hazard exists and why, an OSHA inspection will be conducted. An inspection may include a review of the following: injury and illness records, hazard communication, personal protective equipment, emergency action or response, bloodborne pathogens, confined space entry, lockout and related safety and health issues.

# EXHIBIT "G"

2007  14:48      7184334316          WILD EDIBLES          PAGE  04/04

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION
## BUREAU OF FISH, WILDLIFE AND MARINE RESOURCES
### SHELLFISH SANITATION SECTION (631) 444-0475   FAX (631) 444-0484
### SHELLFISH INSPECTION CHECKLIST FORM

FIRM NAME & ADDRESS

Wild Edibles, Inc.
21-5½ Borden Avenue
Long Island C:ty, NY 11101

AUTHORIZED TO STORE AT

| PERMIT NO. NY 248 | INSP DATE: 4/25/07 |
| PERMIT CLASS | |
| SP   RP  (SS)  RS | |

PREPARATION: ☐ PREOPERATION  ☐ STANDARDIZE
☒ ROUTINE  ☐ RECERTIFY
☐ FOLLOWUP

**HACCP ITEMS**

| | | C | K | O | S | N/A | X |
|---|---|---|---|---|---|---|---|
| 1. HACCP PLAN | Y ☒ N | C | K | | | | |
| 2. PLAN ELEMENTS IDENTIFIED/ADEQUATE | | C | K | | | | |
| a. HAZARDS | | | | O | S | | |
| b. RECORDS | | | | O | S | | |
| c. CRITICAL LIMITS | | | K | O | S | | |
| d. SIGN, DATE, NAME & ADDRESS | | | | O | S | | |
| e. CRITICAL CONTROL POINTS | | | K | O | S | | |
| f. MONITORING | | | K | O | S | | |
| g. SUITABLE VERIFICATION PROCEDURES | | | K | O | S | | |
| h. CORRECTIVE ACTIONS (IF IDENTIFIED) | | | K | O | S | | |
| 3. HACCP TRAINING | Y ☒ N | | | O | S | | |

| | | C | K | O | S | N/A | X |
|---|---|---|---|---|---|---|---|
| 4. PLAN IMPLEMENTATION | a b c d e | C | K | O | S | | |
| MONITORING PROCEDURES | a b c d e | | K | O | S | | |
| RECORDS | a b c d e | | K | O | S | | |
| VERIFICATION PROCEDURES | a b c d e | | K | O | NA | | |
| CORRECTIVE ACTIONS | a b c d e | | K | O | S | | |
| FORMAT/SIGNED/DATED | a b c d e | | K | O | S | | |
| ACCURATE/MAINTAINED | a b c d e | | K | O | S | | |
| NAME & ADDRESS | a b c d e | | | O | S | | |

a=Receiving  b=Shellstock Storage  c=Processing
d=Shucked Meat Storage  e=Other Critical Limits

CONTROL FAILURES

| 5. APPROVED SOURCE | | | | O | S | | |
| 6. TIME/TEMPERATURE | | C | | O | S | | |
| 7. OTHER CRITICAL | | C | K | | NA | | |

**SANITATION ITEMS**

| | C | K | O | S | N/A | X |
|---|---|---|---|---|---|---|
| 8. SAFETY OF WATER FOR PROCESSING & ICE PRODUCTION | C | K | O | S | | |
| 9. CONDITIONS/CLEANLINESS OF FOOD CONTACT SURFACES | C | K | O | S | | |
| 10. PREVENTION OF CROSS CONTAMINATION | C | K | O | S | | |
| 11. MAINT. OF HAND WASHING, HAND SANITIZING & TOILETS | C | K | O | S | | |
| 12. PROTECTION FROM ADULTERANTS | C | K | O | S | | |
| 13. PROPER LABELING/STORAGE/USE OF TOXIC COMPOUNDS | C | K | O | S | | |
| 14. CNTRL. OF EMPLOYEES WITH ADVERSE HEALTH CONDITIONS | C | K | O | S | | |
| 15. EXCLUSION OF PESTS | C | K | O | S | | |
| 16. SANITATION MONITORING RECORDS | | K | O | S | | |

**ADDITIONAL ITEMS**

| | C | K | O | S | N/A | X |
|---|---|---|---|---|---|---|
| 17. PLANTS AND GROUNDS | C | K | O | S | | |
| 18. PLUMBING AND RELATED FACILITIES | C | K | O | S | | |
| 19. UTILITIES | C | K | O | S | | |
| 20. INSECTS AND VERMIN CONTROL | | K | O | S | | |
| 21. DISPOSAL OF WASTE | | K | O | S | | |
| 22. EQUIPMENT CONSTRUCTION (NON-FOOD CNTCT SURFACES) | | K | O | S | | |
| 23. CLEANING OF NON-FOOD CONTACT SURFACES | | K | O | S | | |
| 24. SHELLFISH STORAGE AND HANDLING | | K | O | S | | |
| 25. HEAT SHOCK | | K | O | NA | | |
| 26. PERSONNEL | | K | O | S | | |
| 27. SUPERVISION | | K | O | NA | | |
| 28. TRANSPORTATION (SHIPPER ONLY) | | K | O | NA | | |
| 29. LABELING AND TAGGING | | K | O | S | | |
| 30. SHIPPING DOCUMENTS AND RECORDS | | K | O | S | | |

SHIPPER RUN LOCATION:

DATE OF PREVIOUS INSPECTION:  6/12/07

Long Island City

| INSPECTOR NAME (PLEASE PRINT) | Susan Ritchie |
| HACCP  C - CRITICAL | K - KEY  O - OTHER |
| SANITATION  C - CRITICAL | K - KEY  O - OTHER |
| TOTAL | C  K  O  H  OF |

INSPECTOR SIGNATURE  _Susan Ritchie_

S=SATISFACTORY  X=DEFICIENCY  N/A=NOT APPLICABLE

PAGE 1  OF 2

